163746 Northeast Ohio Coalition for the Homeless at All versus Jon Husted. Oral argument not to exceed 15 minutes per side. Mr. Nafee for the Plaintiff Appellants. May it please the court. I'm Stuart Nafee from Demos and I represent the Appellants Ohio A Philip Randolph Institute. Would you like to reserve any time for rebuttal? Yes, sir. I would like to reserve three minutes for rebuttal. All right. Your Honors, at issue in this case is whether the Ohio Secretary of State can deprive eligible Ohio citizens, voters who remain eligible, have not moved, have taken the time and made the effort to register to vote. I can hear you, but you just don't seem to be projecting very well. I'm wondering if there's a mic issue or no. I'll speak up. It's all right. I mean, I can hear you. It just seemed quieter than usual. Okay. Well, I'll try to speak up. Is that better? It is. Okay. So we're talking about voters who haven't moved, remain eligible to vote, made the effort to register, and have voted in the past. And the question is whether Ohio can strike them from the rolls and deprive them of their right to participate in the democratic process based on a system that begins with the voter's failure to vote. Under the National Voter Registration Act, the answer is clear. The Secretary cannot remove these voters. The situation I just described is exactly the situation that was faced by our client Larry Harmon last November when he attempted to vote in the 2015 statewide election. And like many voters, Mr. Harmon doesn't vote in every election. In 2012, he looked at the candidates and didn't like either of them, so he stayed home as a form of protest. But when he feels strongly about something, he wants to be able to go to the polls and cast a ballot and have it count. And he'd done that many times in the past. But last year, Mr. Harmon went to the polls and learned that he had been stricken from the rolls. The state had decided that it had been too long since he'd voted, and it had purged him. And he wasn't the only one this happened to in 2015. Well, they sent him a notice, and he didn't remember getting it, right? That is correct, Your Honor. And many other voters also received notices or were sent notices and didn't respond, and yet they remained eligible voters. They hadn't moved. And many went to the polls in November of 2015, and many went to the polls in the primary this year in 2016. They attempted to vote. They cast a ballot, a provisional ballot, and it wasn't counted. And there's no question that these voters are eligible voters. The voters we're talking about who we identified in the discovery in this case cast provisional ballots. Under Ohio law, those provisional ballots acted as voter registration applications. So Ohio determined that these voters were eligible. It put them back on the rolls at the very same address where they had been registered before, but it refused to count their ballots. And under the national... or was removed in another way, or do we actually know the answer to that? We do know. We know both from voter history records provided by Portage County, where he resides, and the state has conceded that that is the case. They stipulated to that fact. All right. The supplemental process violates the only reading of the National Voter Registration Act that makes sense of all of the statute's parts, and I'll explain why that is. So at issue, this case is essentially a case of statutory construction, and the question at the core of the case is a simple one. What does it mean that states' efforts to maintain their voter rolls, quote, shall not result in the removal of the name of any person from the official list of persons registered to vote in an election for federal office by reason of the person's failure to vote, end quote? And we think that language means what it says. Well, the district court indicated you didn't put the rest of that sentence on there. It's because there's a common more language, right? Exactly, and I will definitely... there is one exception to that rule. So the general rule is that the state can't... that failure to vote can't be the basis for removing a voter from the voter rolls, and it can't be the basis of any system that results in removal of the voter from the voter rolls with one exception. Can it be considered? Can it be considered? That's what the state's saying as far as I can see, that they considered it, but they also had this mail out that was disregarded by the people who received it. And that what they say? That is what they say, Your Honor, and that is insufficient to give them grounds to remove the voter from the voter rolls. So the exception to this rule against removing voters for failure to vote is for a two-step process that's laid out in Section C and D of the statute, under which when the state has evidence that a voter has changed residence, the state, even with that evidence, must still confirm that the voter has actually moved, and that is what the notice is supposed to be sent for, and if the voter fails to respond to that notice and then doesn't vote in the next two federal election cycles, then the voter, and only then can the voter be removed, and that is the only circumstance in which failure to vote can be relevant to the state's decision to remove the voter from the voter rolls. And even before you get to that step, you have to have evidence that the voter moved. That's step one of this two-step process. Now the statute sets forth a model procedure where at that first step the state can use... Are you arguing that the failure to vote can't be considered at all, that the state should implement some procedure that shows that the person is subject to being purged from the rolls or losing the registration because that person has moved or has not maintained the registration currently, but that failure to vote cannot be taken into account without violating the act? Failure to vote cannot... So I described this two-step process where you have to have evidence of a move and then you have to confirm it using a mailing, and then in that circumstance failure to vote can be considered as part of that confirmation process. Failure to vote cannot be used at the first step to say, well, we think because you failed to vote you've moved. They need better evidence than that, and the model procedure laid out in the statute is using information from the postal service. So what's wrong with the supplemental process is that the failure to vote is used early in the process of deciding whether to remove the person from the rolls since you can validly remove the person taking into account the failure to vote under the procedure you say can be taken into account. Correct. And it's in harmony with the statute. Is that what you're saying? Correct, Your Honor. Failure to vote cannot be used as the initial evidence that the voter has moved. It can be used in the process for confirming other evidence independent of the failure to vote. What's the best language in this statute that says that? Well, Your Honor... Because it cannot be considered solely, does it not? This statute does not say solely. The NVRA doesn't contain that word. There is language in the Help America Vote Act... Don't we consider them both together? Well, you do consider both together, Your Honor, and under the Help America Vote Act it refers to the NVRA. It says that the state's now mandated to keep a statewide voter registration list and it needs to maintain that list in accordance with the NVRA. And it complements it, right? And it complements it. Well, by its terms it doesn't add to it, but it complements it, and it says you can use this procedure where you, when you have evidence of a move, you can purge someone if they fail to respond to a notice and then fail to vote, but you cannot purge them solely for failure to vote. That's the language. Is the problem that the... I'm not sure I'm actually delineating. Is the problem more with the statutory language or is it the quality of the evidence that failure to vote does not have evidentiary value because so many people who have not moved don't vote? Is it both or is it... Both. Okay. And on the first point, if you read the statute as meaning as long as you send a notice and wait two election cycles, you're fine no matter what the reason for sending the notice was. Then you don't have... You haven't attributed any meaning to the provision that says you can't use failure to vote because the subsection D of the statute, which lays out that confirmation procedure, it already says that. So if that's all the prohibition on using failure to vote means, why would you need it? You've got... You're covered with the confirmation procedure. Well, so the... In a nutshell, the statute prohibits what's been done here. Exactly. And even if it didn't outright prohibit it, the evidence you would start with would be insufficient. Is that... That is absolutely correct, Your Honor. And, you know, it's insufficient because as the evidence in our case shows, there are lots of people who fail to vote and haven't moved and sometimes they still come out. Can you talk a little bit about the record? I mean, we were obviously under a great deal of time pressure, as were all of you all, to prepare for the case. So can you talk to me a little bit about what the record does in fact show? Absolutely, Your Honor, and we would like to thank the court for expediting this case. The record... The evidence in the record is evidence from voter history files that were obtained from the counties in the discovery process.  But in some counties you could tell when the person was removed and for what reason, and you could tell what address they were registered at prior to being removed. And we compared those records to the provisional ballots that were cast in the 2015 general election and the 2016 primary and identified the voters that we have discussed, the over 600 voters we discussed, who cast a provisional ballot and listed exactly the same address where they had been registered prior to the 2015 purge. And in some cases they were purged even before that, but they continued to live at the same address. The response to that is pretty much, as I read it, that the statute doesn't require the sort of evidence that you claim it does. Well, the statute requires that people cannot be removed unless they become ineligible, and failure to vote doesn't give the state sufficient information to believe that the person has become ineligible. So there is a statutory basis for it, and then there's an evidentiary basis where it shows that, you know... And then at some point the whole reasonableness inquiry comes into play and the argument there is that the procedure used by the state of Ohio cannot be reasonable because it starts with this evidence that is insufficient to show what the state claims it in fact shows. I'm just trying to make sure I've got this analytically correct in my head from your point of view. Yes, it's unreasonable because it's insufficiently connected to eligibility, and the requirement is that the state make a reasonable effort to remove ineligible voters. It's not that it has to make some effort to remove voters. It's got to be targeting ineligible voters, and failure to vote doesn't do that. And one of the purposes of the statute was to ensure that eligible voters register and that they stay registered as long as they remain eligible. And allowing the state to remove people because they haven't voted does not ensure that voters who remain eligible stay on the rolls. I know you're out of time, but what relief are you asking for here?  The relief we're seeking is that if one of these voters, so the voters who came out in November 2015 and 2016, if voters like that come out, they cast a provisional ballot, they list on that ballot the same address where they were registered before, and the state can confirm that, and the state's confirming their eligibility anyway because it treats that as a voter registration application. So the state is already determining that they're eligible, and all we are asking for is that if that happens in future elections, that those ballots will be counted. Not only will the voter be put back on the rolls, which already happens, but that ballot will be counted. Adjunctive relief to that. Adjunctive relief to that effect. You mean counted after they're validated. After they're validated, exactly.  Okay, you'll have your full rebuttal time. Thank you. Good afternoon. Good afternoon, Judge Clay, Judge Seiler, Judge Gibbons. May it please the court. My friend and I here agree on one thing, and that this is a statutory interpretation case, and I think we part paths there because the question is, where in the statute is there a requirement, as you said, that voting cannot be considered to start the process or that there must be a certain quality of evidence to begin the process that ultimately is in subparagraph D of 20507. That is where Congress has specified the steps to take at the back end of the process. So this is a statutory interpretation case, and in three specific places. Well, you know, there is the language in the statute that says that a person should not be, the process should not result in the removal of a name of a person from the official list of voters registered to vote in an election for federal office by reason of the person's failure to vote. So statutorily, it is appropriate to consider whether the person's failure to vote is being impeded. Your Honor, so the pair of non-activity by the registrant that leads to being canceled from the registration list is the same in three distinct parts of the statute here. This is the two parts that are in the NVRA as amended by the Help America Vote Act, as well as in the Help America Vote Act itself. So, Judge Clay, the part you were just quoting from goes on to say, but nothing shall be construed in this paragraph to prohibit the state from using the processes listed below in subparagraphs C and D, and then it lists the same two bits of non-activity that are consistent across the statutes here, not responding to a request to confirm, and then not voting in two consecutive elections. Why are these folks purged from the rolls? They are removed through this process because the states, remember, the structure of the statute does conclude. No, no, no. Why? I mean, because you're removing them because they failed to vote. You're not removing them because they failed to respond to a notice, correct? No, it's both, Your Honor. Just as the statute said, it is failure to respond to the notice plus the failure to vote in two consecutive elections. It seems to me that a failure to respond to a notice, I'm not aware that that is an adequate basis for purging somebody from the rolls either, and so it all rises and falls, it seems to me, with the initial consideration and the inconsideration of the failure to vote, and so even if there's no specific evidentiary requirement, I mean, if you're going to start and end with that, you've got to in some way say this is a valid way for us to determine that there's another basis for removal. Your Honor, Congress has said what is a valid basis for removal, and they've said that in three distinct places. Well, it said that failure to vote was not. Failure to vote alone. So in the Help America Vote Act, this is in 52 U.S.C. 21083A4. It says that states shall cancel the registrations of those who have won, not responded to this confirmation, and then two, not voted in two consecutive federal elections. Then there is a comma, except that failure to vote shall not solely result in removal. So that except clause tells us not to take that shall, looking at those two non-activities, the failure to respond to the confirmation notice and the failure to vote, but don't read that just like subparagraph B that Judge Clay and I were discussing. Don't read that. Don't construe that to mean that it's only the failure to vote alone that is allowed to lead to that. Are other states following the procedure that you say that Ohio is, or is this kind of an outlier? I think, Your Honor, and if you look at footnote two of the reply brief that my friends filed, I think we agree that Georgia and Tennessee have very similar systems to Ohio. So it's certainly not a one-off outlier in that sense. I would not pretend in the short time that you mentioned to know the ins and outs of all of the 50 states and the county levels and so forth, but there are at least those two states I think are very analogous. You know, one argument might be the two subsections of the statute that you referred to in response to my question, one interpretation might be that those subsections refer to the confirmation notice process but not the supplemental process or procedure that Ohio is using, which it would have to take into account to have the meaning that you're arguing for. Well, Your Honor, we're not saying that subparagraph D is a stand-alone command to the states. The command to the states is over in subparagraph A that says the states must make an effort to maintain accurate voter rolls. Then it sets off in subparagraphs B, C, and D various restrictions on the programs that the states have the discretion to set up. B sets certain general ground rules. Subparagraph C has a safe harbor and then a specific 90-day time limit. And then subparagraph D describes the end part of the process. And perhaps the best way to see this is in language that was added in the Help America Vote Act. This is at 52 U.S.C. 21085. And this says the specific choices are left to the states' discretion about how to comply with the mandate that they have. Remember, both of these statutes impose dual mandates on the state. On the one hand, to make registration more available, but on the other hand, to maintain accurate voter registration lists. And that means that states are caught in between, but Congress did not put them on a knife's edge between those competing mandates. It left them, as the Help America Vote Act says, with discretion. Well, your argument really is based on the discretionary nature of how the state decides to proceed in establishing these procedures. But if it's a matter of discretion, arguably, couldn't the state of Ohio send out a notice to everyone, to all voters, every two years, and set up the process in that way? Absolutely. And I think that shows why it's not connected to voting in the way that my friend would have you say. It would be entirely permissible under these acts to simply say, a million people in Ohio move every year, and so every two years, instead of limiting it for cost and administrative reasons to those who have not voted for two elections before that, to mail to everyone, say, please confirm, and if you don't confirm, and then don't vote for two consecutive elections, then the registration will be canceled. That's the specific two non-actions that Congress says over and over in three different places. This is confirmed by what was in the Senate report on this bill, as well as the identical bill that failed before this became law in 1993. What about, are there states that are using procedures other than the postal service type information that's referred to in the statute, that are using other procedures, other information, to begin a potential removal process? I believe some states, I certainly don't have a catalog for you, I believe some states do begin with an all-voter mailing, but it's not identical to the hypothetical I just described with Judge Clay. They begin with an all-voter mailing, and then they gather information from that mailing about, say, mail that bounces back to the mailing entity. So that is a process that some states do use. So they would not proceed further with respect to the ones who didn't bounce back, but they would proceed with respect to the ones that did bounce back? That is my understanding of how those states do proceed. So in both the postal service process and that process, you start with indication of a change of address. That's right, but that choice is something that is left to the discretion of the states. They could do an all-voter mailing. They could do what they've done here. Well, as I can, act in contravention of the federal statute. So it all comes down to how one interprets the statute. That's absolutely right, and if you look across these three different parts of the statute, it says over and over, these two non-activities, especially if you look at the language in 21083A4, it says the state, as part of the minimum standards it must meet to maintain accurate voter rolls, it shall remove the registrations of those who do not respond to the confirmation and do not vote in two consecutive federal elections. And then there is that except, but don't read that language, Congress says. Don't read that language to say that solely the act of non-voting alone may lead to the cancellation. Now, your opponent suggested that you could look in the different counties and find who signed petitions and things like this to see if they still have the same address. Is that something that's feasible, or what's the situation there? Your Honors, I understand the argument about the, so this is signing things like nominating petitions or local election issues. The issue there was they originally brought a challenge saying that Ohio's process was not uniform because of how it treated those who signed petitions. Does that count like going and voting as a voter activity in this total six-year period sandwiched around not responding to confirmation notice? And that, I don't view them as still pushing that argument, but it is still uniform for this reason, Your Honor. In those counties, some counties, when they're looking at a list of, say, you need 1,000 signatures for an issue, when they get to signature 1,000, they simply stop counting. Other counties go through and verify all of the signatures. So a uniform approach to that would be not necessarily counting, letting each county approach that depending on what it does with those signatures. But, again, it's something I don't view at the appellate level that the plaintiffs are still pursuing. I'm not sure that if a person's not voting for eight years that he's likely to sign that petition for a candidate anyway, but that's not before the court. I think that is right. I don't think it's something that's still live in this appeal. Your Honor, beyond that, there's three different plain text provisions. Again, they each point to the same two non-actions. Look at what the Department of Justice says. They say there's one case in the country that has ever considered this issue. It was a California case from the 1990s. This is Exhibit 8 to the Department of Justice amicus brief, and it reads the statute. Although it approved a California process that is different from Ohio's, it rejected the idea that a pair of non-activities, confirmation plus not voting, was canceling a registration based only on voting. And that is the core of the plaintiff's argument, that you can't start the process with non-voting. That is left, as HAVA itself says, that choice is left to the discretion of the states. It could be an all-voter mailing. It could be, as it makes sense here, a subset, because those who vote every two years are confirming their addresses already. Those who haven't voted, it makes sense for that subset to further confirm their addresses. Well, I mean, if you move, but move within the same precinct, and I mean, I know Ohio has these different rules about precincts, but as long as you're showing up at the place you're supposed to vote, are you not allowed to vote just because you moved from one apartment to another three doors down? Certainly within a precinct, and there was litigation of this four years ago, yes, within a precinct you're still allowed to vote. Even moving from, say, Columbus to Cleveland, you're still able to vote a provisional ballot. So that doesn't change your ability to vote, that moving there. So what all of this is driven by, this entire process, just like the safe harbor process in subparagraph C1, is maintaining accurate voter registration lists. That's what Congress was concerned about in 1992 when they passed the National Voter Registration Act, and again in 2002, and that's why, as I mentioned, there are these dueling mandates placed on the states to make registration more available from the one direction, and then to maintain accurate lists from the other direction. And Ohio, like other states, faces liability from both directions. There are plaintiffs, like you had before you today, suing when they think there's not enough registration. Ohio was sued just a couple of years ago by an entity that said Ohio was not doing enough to maintain its accurate registration rules. That is why Congress left space for the states to operate. What Ohio is doing here with its supplemental process does exactly what the statute says. Over a period of six years, non-voting around failure to respond to a confirmation notice. That reading is not just in the plain text of those three provisions. It's supported by the structure of the act. As I mentioned earlier, the subparagraphs B, C, and D lay out in B there are general restrictions, in C there's a specific safe harbor and a 90-day limit, and then in D it describes the back end of the process but does not describe the front end. Structurally, that shows why the front end of the process is left to the choice of the states, and as some of the questioning here reveals, states do take different approaches as to how to start this process. Can you kind of outline for me the time frame when adversary counsel was asked about the exact nature of the adjunctive relief? I was not sure after I heard this that this case was overall as time sensitive as I thought it was, and I thought that perhaps some interim adjunctive relief, if appropriate, would take care of the situation until we could do a fuller consideration. What's your take on that? Well, Your Honor, one thing that I would say is that the Secretary is planning, as we mentioned in our brief, to start the process by he sends out a directive to the counties of Ohio this week is the plan to do so to start that process. That has no effect on voting in 2016. That has effects in 2020, and because of the federal limit of not removing registrations within 90 days of an election, as we get closer to 90 days before this general election, then that affects being able to do that in 2020. In terms of the timing of an adjunctive relief here as to what they're asking for, I read what I hear my friends saying here right now is that the adjunctive relief they initially requested, which was put everyone back on the roll that has ever been removed, now it sounds like it's narrower and that it is just count votes of those who show up this time in 2016 who are not on the registration list. And that poses its own problem of if there is not information for that voter in the databases, and it is quite difficult to confirm them. So I'm not sure what kind of adjunctive relief that they would be asking for. He says that he wants the people who fill out these provisional ballots to have them counted if they are still where they used to be, even though you purged them, as I understand it. Right, but to figure out if they are still where they used to be, there has to be information in the database that's their actual address. You don't have just the piece of paper on the provisional ballot. You need information from some database that matches up. That's how provisional ballots are validated is matching up information on the provisional. You don't maintain information on individuals who were purged? So starting in 2014, the statewide database went from a dynamic database to one that does preserve the information, and at the county level, as the only deposition in this case that addresses that, so at the county level some of them do preserve that further back, some don't. So you do have somewhat of a disuniformity problem with even this proposed injunction of look back to the information that was there before. All right. If there are no further questions, I guess you're out of time. Thank you, Your Honor. We'll take rebuttal. Your Honors, I'd like to address a couple of points that were raised. First, on the question of whether failure to respond to the notice provides an additional basis for considering that the person has moved or something that would take it outside of the restriction on purging for failure to vote, one could view sending a notice and not having that notice be returned by the Postal Service, if that notice is delivered as addressed, one could see that as evidence that the person had not moved just as well as evidence that the person had moved. And that is why that procedure on its own, that notice and the subsequent failure to vote, is not a stand-alone procedure for removing voters, as the state seems to suggest. All of the provisions, Section 8D of the NVRA and the provision in HAVA that has been referenced, presume that the notice has been sent. So in the HAVA provision, it says the state shall purge people who fail to respond to the notice and fail to vote for two election cycles, but it's presuming that the notice has already been sent, and there's got to be a reason to send that notice. And while it is true that the state has some discretion about who it's going to send those notices to, it can use the Postal Service information if it wants to. It can use returned mail. It can use other sources of change of address information. But the statute specifically says it can't use failure to vote at that stage, and it can't use a process, and my opponents concedes that Section B puts restrictions on who can be sent a notice. It can't be discriminatory. It can't be non-uniform. They leave out the part about it can't be based on failure to vote. So just as they couldn't mail notices only to women, they can't mail notices to people on the basis of failure to vote. The first would violate Section 8B.1. The second violates Section 8B.2. The only place they can consider failure to vote under the exception to 8B.2 is in that confirmation process. And if you read the confirmation process as long as you sent a notice and waited the two election cycles, there would be no point in the restriction on purging for failure to vote because it's contained in Section D in the confirmation procedure, that restriction. And there would also be no need to set forth a safe harbor because any reason for sending the notice would be a safe harbor. So it would read two provisions out of the statute if you read the confirmation procedure to be sufficient on its own to remove a voter from the voter rolls. Would they meet your criteria if when nobody voted that they'd send an officer over to that address and knock on the door and nobody answers and it looks like it's abandoned and come back and say they're gone? As long as they're doing that uniformly throughout the jurisdiction, Your Honor, yes, that would be sufficient. And there are states that have statutes on the books that say they can comply in that way. I don't know that any of them are actually doing that. It's a lot of work. But yes, that would be a valid basis for believing that the person... You're talking about sending certified mail return receipt requested. Is that okay? If you sent it certified mail return receipt requested and it got delivered... It'd have to be delivered, I suppose. Yes, and I think so. It is a very factual question. If the voter signs it and the return receipt gets sent back, well, I would think that's evidence the voter's still there. So even if they don't respond to the notice, you can't purge them on the basis of not responding to the notice. And it may not be delivered because there's no one home when the Postal Service tries to deliver it and they only try a certain number of times. So then it becomes... There are a lot of factual issues that might become relevant there. Let me ask about this relief that you're requesting. The secretary indicates that it's not very possible when you fill out a provisional ballot and they have to verify where the person lives. Are they going to have to have some kind of an ID to show that they still live there? Well, I would say first... I think what he's saying is that they would need records to show where the person used... where they were registered before, and he's conceded that back to 2014 they have those records. So anyone purged in 2015, which was... They'd have to show they still live there, wouldn't they? Well, they show they still live there, I mean, partly by showing up at the polls and signing an affidavit that says, this is my address, and then the question is, can you figure out, does that address match where they were registered before they were purged? And according to the state, anyone purged in 2015, the state has that information on a statewide basis. Anyone purged prior to 2014, it would have to go to the county databases and you'd have to determine whether the counties had that information. But, you know, I think we could agree that as long as the county can verify that that's where the person lived before they were removed, the county would have to be able to verify that as part of the injunctive relief. Counsel, your opposing counsel seems to say that on the subsection B2A... subsection B2A and B of the statute that if that is... that that language supports of the subsections A and B, use of looking at failure to vote as a part of the supplemental process utilized by the state of Ohio instead of simply the confirmation notice. If... does the outcome of the arguments between the two of you hinge on whether we think that the correct interpretation of those statutory provisions support the way the state was using the supplemental process or not? Does your entire argument hinge on that, among other things? The argument certainly hinges on whether... on how you read the statute. I would say that if you read that... those two subparagraphs as meaning that all the state has to do is send a notice and wait two election cycles, you haven't given any meaning to the actual prohibition on using failure to vote. You've given... because that... you know, what does that mean beyond those... you know, what does the rule mean beyond its exception? And that's... so that's the question that we're asking, right? There's a rule that says you can't use failure to vote. There's an exception that says you can do this process to confirm a change of address. But does the rule prohibit anything that isn't permitted by the exception? And I think, according to their reading of the statute, the answer is no, there's nothing prohibited by that prohibition on failure to vote other than what is permitted by the exception. So then you don't have a prohibition on use of failure to vote if you read the exception that broadly. You've read the exception to basically... it's basically the same thing. But in my hypothetical to you, when I said if they send the person around to check the address, that still follows in line with what you're saying, that the failure to vote triggers it all. Well, the failure to vote... So you're saying that's okay. It meets the statute, right? There's an intervening reason to think that the person has moved. There's... so the... even if you only send that person to the houses of people who failed to vote, you've got evidence, sort of following that, you've got evidence that the person has moved. So you're not triggering the removal process on the basis of the failure to vote, you're triggering it on the basis of the evidence that the person no longer lives there. It's just not only the failure to vote, but the personal checking of the residence. Exactly. So it's proper to view both of those as the evidence. And... Yes, and it really... the failure to vote in that circumstance is kind of irrelevant. I mean, they could send someone around to every house in the district. It's the fact that they sent someone there and found that the person didn't live there, and that evidence becomes the evidence that triggers the removal process. Would that alone be sufficient? No, they would... Going to the house. Going to the house would not be sufficient. So the statute, subsection D, which is the confirmation process, says, even when, you know, it says you can't remove someone on the basis that they've moved unless you do this confirmation process. Oh, I didn't mean that you didn't do the confirmation process. I meant sufficient to trigger it. Yes, absolutely. The knocking on the door and finding that, you know, this person doesn't live here anymore, that would be sufficient to trigger it, absolutely. All right, thank you very much. Thank you, thank you, Your Honor. And the case is submitted. We will have a decision at an early date. Thank you for your arguments, and may I adjourn court. This honorable court stands adjourned. Thank you.